98 A.3d 1223

**COMMONWEALTH of Pennsylvania,
OFFICE OF the GOVERNOR**

v.

**Sean DONAHUE and the Office of Open Records.**

**Appeal of Office of Open Records.**

Supreme Court of Pennsylvania.

Argued Nov. 20, 2013.

Decided Aug. 18, 2014.

438

440

Sean Donahue, for Sean Donahue.

Charles Rees Brown, Esq., PA Department of Community and Economic Development, Dena Lefkowitz, Esq., J. Chadwick Schnee, Esq., Office of Open Records, for Office of Open Records.

Thomas Paul Howell, Esq., PA Department of Labor & Industry, for Office of the Governor.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

*OPINION*

Justice BAER.

In this matter, the Office of the Governor brought a declaratory judgment action in the Commonwealth Court, challenging the Office of Open Records' interpretation of 65 P.S. § 67.901, which addresses an agency's time frame for responding to written requests for documents made pursuant to the Right-to-Know Law.[1] The Commonwealth Court granted the Office of the Governor's request for declaratory relief, and held that pursuant to 65 P.S. § 67.901, an agency must respond to a Right-to-Know Law records request within five business days of receipt of the request by the agency's respective open-records officer. After explaining the procedural history of this case, we first consider whether the Office of the Governor had standing to bring the declaratory judgment action and then whether the Commonwealth Court had subject matter jurisdiction in this matter. Finally, we address the Common-

1. Providing in relevant part:
 Upon receipt of a written request for access to a record, an agency shall make a good faith effort ... to respond as promptly as possible under the circumstances existing at the time of the request.... The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.
 65 P.S. § 67.901.

wealth Court's interpretation of 65 P.S. § 67.901 of the Right–to–Know Law. For the reasons that follow, we affirm the order of the Commonwealth Court.

## I.

On March 7, 2012, Sean Donahue (Donahue) submitted to the Office of the Governor (OG) a Right–to–Know Law (RTKL) request via email, seeking various budgetary and employment records. OG's open-records officer did not receive the request until March 12, 2012; and five business days later, on March 19, 2012, the open-records officer proceeded to grant Donahue's request in part and deny the request in part.

On March 29, 2012, Donahue timely appealed to the Office of Open Records (OOR). OOR determined that Donahue's request was "deemed denied" because OG failed to respond to the request within a five business day period as required by 65 P.S. § 67.901. According to OOR, Section 901 affords an agency five business days to respond to a RTKL request after receipt of the request by any employee of the agency. Instantly, OOR concluded that the five business day period for responding to Donahue's request began to run on March 7, the date on which an OG employee first received the request, and that the request was therefore "deemed denied" when OG failed to respond within five business days, which was by March 14.[2] The fact that OG's open-records officer did not receive the request until March 12 was immaterial to OOR's analysis. Notwithstanding its holding that the request was "deemed denied," OOR issued a final order upholding OG's substantive response and denying Donahue's appeal on the grounds that his records request was insufficiently specific.

Even though OG prevailed in the matter before OOR, it appealed OOR's final order to the Commonwealth Court, where it contested OOR's interpretation of Section 901 of the RTKL. OG contended that OOR wrongly concluded that an agency must respond to a RTKL request within five business

**2.** A deemed denial furnishes the requestor the right to file an appeal with the OOR within fifteen business days that the deemed denial becomes effective. *See* 65 P.S. § 67.1101(a).

days from the date any person within the agency receives such a request. To the contrary, OG argued that an agency, including it, has five business days to respond from the date its RTKL open-records officer receives the request for records. *See* 65 P.S. § 67.901 (stating that agencies must respond to record requests within "five business days from the date the written request is received by the open-records officer for an agency."). On July 2, 2012, the Commonwealth Court issued a *per curiam* order quashing OG's petition for appellate review. The Commonwealth Court held that OG lacked standing to appeal from the OOR order because OG was not "aggrieved" by the order, but merely disagreed with an issue decided against it regarding the time frame for responding to RTKL records requests.

In addition to appealing OOR's final order, OG simultaneously filed a declaratory judgment action in the Commonwealth Court's original jurisdiction, seeking a declaration that OOR misinterpreted Section 901 of the RTKL with respect to the commencement of the five business day period for responding to a RTKL request under Section 901.[3] As noted above, OG sought a holding from the court that the five business day period for an agency to respond to a RTKL records request does not start running until receipt of the request by an agency's open-records officer, as opposed to receipt by any employee of the respective agency.

In response to OG's petition for declaratory judgment naming OOR as respondent, OOR filed preliminary objections claiming, *inter alia*, that OG lacked standing to bring a declaratory judgment action against it because, as found by the Commonwealth Court with regard to OG's appeal in the *Donahue* matter, OG was not aggrieved by OOR's decision in *Donahue* and, therefore, lacked standing to bring an original jurisdiction action raising an issue decided therein. OOR also claimed that the Commonwealth Court lacked original juris-

---

3. OG named both OOR and Donahue as respondents in its declaratory judgment action. The Commonwealth Court dismissed Donahue as a party to the declaratory judgment action on the grounds that the Commonwealth Court is an improper forum for OG to file an original action against Donahue.

diction to entertain OG's petition for declaratory relief, because the General Assembly specifically placed such matters in the judiciary's appellate rather than original jurisdiction through the statutory appeals process established in Chapter 13 of the RTKL. *See* 65 P.S. § 67.1101. Finally, OOR averred that OG's claim should be dismissed because the Commonwealth Court previously held in *Pennsylvania Gaming Control Bd. v. Office of Open Records,* 48 A.3d 503 (Pa.Cmwlth. 2012) (*"PGCB "*) that an agency employee's receipt of a RTKL request triggered in that case the five business day period for responding to the request.

In a single judge order, issued without opinion on August 28, 2012, the Commonwealth Court dismissed OOR's preliminary objections and proceeded to entertain OG's declaratory judgment action against OOR. Order of the Cmwlth. Ct., No. 376 M.D.2012 (Aug. 28, 2012). As justification for its August 28, 2012 order dismissing OOR's preliminary objections, the Commonwealth Court cited without explanation the following two cases: *Pennsylvania State Educ. Ass'n ex rel. Wilson v. Commonwealth,* 616 Pa. 491, 50 A.3d 1263 (2012) (permitting a teachers' union to sue OOR in declaratory judgment in the Commonwealth Court, where the teachers' union raised substantial constitutional issues and was not a party to the underlying RTKL request proceeding); and *Pennsylvania State Lodge v. Commonwealth,* 692 A.2d 609 (Pa.Cmwlth.1997) (affirming the dismissal of a declaratory judgment action against the Pennsylvania Department of Labor and Industry where the plaintiff failed to allege any facts demonstrating that it suffered actual and immediate harm as a result of the department's actions).

In an order and supporting opinion filed January 23, 2013, a three judge panel of the Commonwealth Court granted OG its requested declaratory relief on the merits. *Commonwealth v. Donahue,* 59 A.3d 1165 (Pa.Cmwlth.2013). Notably, the court expressly declined to address the issues of standing or jurisdiction raised by OOR in preliminary objections because these issues, in the court's view, were resolved by the single judge

August 28 order denying the preliminary objections. *Id.* at 1167 n. 5. Instead, the court proceeded directly to the merits.

The court rejected OOR's determination that an agency's five business day period for responding to a RTKL request under Section 901 commences when any agency employee receives the request. Specifically, the court held that OOR mischaracterized the Commonwealth Court's holding in *PGCB* to stand for the proposition that an agency employee's receipt of a RTKL request triggers the five business day period for responding to the request. *Id.* at 1169. In *PGCB,* an agency employee failed to forward a records request to an open-records officer and, allegedly, ignored the request after deciding, in a solitary act, that the request was defective. 48 A.3d at 504–05. The Commonwealth Court concluded in *PGCB* that under these circumstances the records request was "deemed denied," and held that, generally, written requests for records do not need to be specifically addressed to the agency's open-records officer or follow certain formatting guidelines in order to be valid. *Id.* at 508–10.[4] In its analysis of the case before us, the Commonwealth Court limited its holding in *PGCB* to the substance and form of RTKL requests, and refused to treat that case as dispositive with regard to the five day time frame for responding to a RTKL request under Section 901. *Donahue,* 59 A.3d at 1169. Ultimately, the court held that, according to the plain language of Section 901, an agency must respond to a written RTKL request within five business days of the request's receipt by the agency's designated open-records officer. *Id.* at 1170.

## II.

■ We first consider whether OG possessed standing to petition the Commonwealth Court for declaratory relief given OOR's interpretation of 65 P.S. § 67.901 enunciated in *Donahue.* The issue of standing is a question of law; thus, our

4. This Court granted allocatur to consider this issue, namely whether the Commonwealth Court in *PGCB* erred by holding that RTKL records requests do not need to be either specifically addressed to the agency's open-records officer or follow certain formatting guidelines in order to be valid. *PGCB,* 48 A.3d 503 (Pa.Cmwlth.2012), *appeal granted* 74 A.3d 1027 (Pa.2013).

standard of review is *de novo* and our scope of review is plenary. *Johnson v. Am. Standard,* 607 Pa. 492, 8 A.3d 318, 326 (2010).

OOR argues that the Commonwealth Court's decision granting declaratory relief should be vacated because OG suffered no harm as a result of OOR's final order in the *Donahue* case, and therefore lacked standing to sue OOR. OOR reasons that just as the Commonwealth Court correctly found that OG lacked standing to appeal OOR's final order in *Donahue* because it was not aggrieved, the court should have also held that OG lacked standing to sue OOR in declaratory judgment where it sought the same relief (reversal of OOR's holding in the *Donahue* matter) for the same reason (that OOR's position was contrary to the statutory language).

Specifically, OOR argues that OG failed to meet the required elements for standing in its declaratory judgment action-namely, OG failed to demonstrate that its asserted interest was substantial, direct, and immediate. *See Fumo v. City of Philadelphia,* 601 Pa. 322, 972 A.2d 487, 496 (2009). OOR avers that when it rendered its order in *Donahue* it did not engage in any sort of "rulemaking" as defined by the Commonwealth Attorneys Act, 71 P.S. §§ 732–101 *et seq.;* the Commonwealth Documents Law, 45 P.S. §§ 1201–1208; or the Regulatory Review Act, 71 P.S. §§ 745.1 *et seq.* In the absence of official rulemaking affecting OG, OOR contends that OG did not suffer any harm.

OOR further argues that mere disagreement with a tribunal's legal reasoning or conclusions of law does not confer standing on a party. *See ACS Enters. v. Norristown Borough Zoning Hearing Bd.,* 659 A.2d 651, 654 (Pa.Cmwlth.1995) ("[A] prevailing party's disagreement with the legal reasoning or basis for a decision does not amount to a cognizable aggrievement necessary to establish standing."). OOR contends that any potential future adverse consequence of its interpretation of Section 901 is not sufficiently immediate to confer standing on OG for purposes of declaratory relief, and that OG must wait to make its challenge in a case where it is, in fact, aggrieved, at which point OG may pursue its remedy through

the specific statutory scheme for review established in Chapter 13 of the RTKL. *See Empire Coal Mining & Dev. v. Dep't of Env't Res.*, 154 Pa.Cmwlth. 296, 623 A.2d 897, 900 (1993) (stating that the mere possibility of a future adverse judicial ruling is not sufficient to establish an immediate injury for purposes of standing); *see also Yarmoski v. Lloyd*, 110 Pa. Cmwlth. 97, 531 A.2d 1169, 1171 (1987) (holding that declaratory judgments "are not to be entered in anticipation of events that may never occur."). Finally, OOR avers that its interpretation of Section 901, where OOR would require agencies to respond to record requests within five business days upon receipt by any agency employee, does not waste agency time or resources.

In response, OG concedes that the Commonwealth Court properly dismissed its petition for appellate review in *Donahue* after finding that OG lacked standing to appeal the OOR order. OG, however, contends that it nonetheless possessed standing to petition the Commonwealth Court for declaratory relief against OOR. OG observes that standing to bring an original complaint exists where a party asserts a "discernible adverse effect" to an individualized interest. *See William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 282 (1975) (plurality). Here, OG contends that, apart from the Commonwealth Court's declaratory order, OOR's decision in *Donahue*, where OOR announced its interpretation of Section 901, would force OG to alter both the manner in which it communicates with the public and the manner in which it litigates RTKL matters, thus imposing significant administrative burdens on OG.

 In Pennsylvania, the doctrine of standing at issue in this matter is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. *In re Hickson*, 573 Pa. 127, 821 A.2d 1238, 1243 (2003). For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been "aggrieved." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655, 659 (2005). As this Court explained in *William Penn Parking*

*Garage,* "the core concept [of standing] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge." 346 A.2d at 280–81. A party is aggrieved for purposes of establishing standing when the party has a "substantial, direct and immediate interest" in the outcome of litigation. *Johnson,* 8 A.3d at 329 (quoting *Fumo v. City of Philadelphia,* 601 Pa. 322, 972 A.2d 487, 496 (2009)). A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative. *Id.*

■ Thus, while the purpose of the Declaratory Judgment Act, 42 Pa.C.S. § 7531 *et. seq.,* is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered," the availability of declaratory relief is limited by certain justiciability concerns. 42 Pa.C.S. § 7541(a). In order to sustain an action under the Declaratory Judgment Act, a plaintiff must allege an interest which is direct, substantial and immediate, and must demonstrate the existence of a real or actual controversy, as the courts of this Commonwealth are generally proscribed from rendering decisions in the abstract or issuing purely advisory opinions. *See Pittsburgh Palisades Park,* 888 A.2d at 659; *see also In re Hickson,* 821 A.2d at 1243.

■ OOR's contention that its newly announced interpretation of Section 901 does not waste agency time or resources or otherwise harm OG's interests borders on the frivolous. Pursuant to OOR's interpretation of Section 901, the five business day period for responding to a RTKL record request triggers upon receipt by any one of OG's employees, as opposed to the date of receipt by OG's respective open-records officer.[5] The effect of OOR's interpretation is to shorten the window for

5. The impact of OOR's interpretation of Section 901 extends to every Commonwealth agency, which are all subject to the directives of the

responding to RTKL record requests, thereby making it more difficult for OG to comply with the time requirements of Section 901. With less time to respond to record requests, the likelihood of deemed denials is higher, which will increase the number of RTKL matters that OG is forced to adjudicate with the OOR. *See* 65 P.S. § 67.1101. OG's allegation of harm is neither remote nor speculative, and as an administrative agency of the Commonwealth charged with complying with the statutory directives of the RTKL, OG possesses a cognizable interest in the outcome of this dispute that surpasses the interest of all citizens.

Moreover, OOR's insistence that OG is not aggrieved in the absence of OOR engaging in official rulemaking is misguided. Notably, the RTKL authorizes OOR to adopt regulations and issue advisory opinions to facilitate the implementation of the statute. *See* 65 P.S. § 67.504(a); 65 P.S. § 67.1310(a). While the *Donahue* decision is neither a regulation nor an advisory opinion, and although OOR's discussion of Section 901 in *Donahue* was essentially dicta (in that OOR upheld OG's dismissal of Donahue's record request for being insufficiently specific), OOR has proceeded to defend its interpretation of Section 901 in this appeal and has otherwise indicated that it intends to enforce Section 901 in accordance with the position it took in *Donahue.* Brief of OOR at 17–18. Thus, OOR's initial adjudication in this matter and subsequent advocacy serves to enunciate sufficiently its position on this issue which adversely, directly and immediately impacts OG.

RTKL. *See* 65 P.S. §§ 67.302, .303, and .304 (providing that Commonwealth agencies, local agencies, legislative agencies, and judicial agencies shall provide public records in accordance with the RTKL); *see also* 65 P.S. § 67.102 (defining Commonwealth agencies, local agencies, legislative agencies, and judicial agencies for the purposes of the RTKL). Thus, while OG is not especially populous, we take judicial notice that OOR's interpretation of Section 901 would pose significant administrative challenges to agencies such as the Department of Corrections or the Department of Public Welfare, which collectively employ over 30,000 employees, any of whom, according to OOR, could serve as proper recipients of RTKL record requests for the purpose of triggering the time requirements of Section 901. *See 2013 State Government Workforce Statistics*, PENNSYLVANIA OFFICE OF ADMINISTRATION, http://www.oa.state.pa.us/portal/server.pt/community/workforce_statistics_(new)/20613/workforce_statistics_new/1054504 (last visited Jan. 24, 2014).

For these reasons we conclude that OG possesses standing to challenge in a declaratory judgment action OOR's interpretation of Section 901. Our position in this respect is consistent with similar decisions where we have recognized the justiciability of declaratory judgment actions seeking pre-enforcement review of an administrative agency's interpretation and enforcement of a governing statute. *See Arsenal Coal Co. v. Commonwealth,* 505 Pa. 198, 477 A.2d 1333 (1984) (upholding a pre-enforcement challenge of agency regulations that had a direct and immediate effect on the party seeking declaratory relief); *Bayada Nurses, Inc. v. Commonwealth,* 607 Pa. 527, 8 A.3d 866 (2010) (affirming the justiciability of a declaratory judgment action challenging an agency's interpretation of a provision in a governing statute). The fact that OOR has not engaged in official rulemaking with respect to its interpretation of Section 901 is a distinction without a difference. By setting forth and defending its interpretation of Section 901, OOR's conduct under the facts herein adversely, directly and immediately impacts OG, thus conferring on OG standing to challenge OOR's interpretation in declaratory judgment.

## III.

Next, OOR argues that the Commonwealth Court lacked jurisdiction over OG's declaratory judgment action. OOR phrases the issue as "[w]hether the Commonwealth Court erred by finding it had jurisdiction over the Governor's original jurisdiction complaint alleging a misinterpretation of statutory law in the absence of any harm or constitutional question?" Brief of OOR at 4. We note that in so arguing, OOR conflates the distinct notions of jurisdiction, standing, and exhaustion of statutory remedies.[6] Notwithstanding, we will summarize and respond to OOR's posited argument.

OOR claims that, in rendering its order of August 28, 2012, denying OOR's preliminary objections to jurisdiction, the

6. The terms "exhaustion of statutory remedies" and "exhaustion of administrative remedies" are at times used interchangeably in our decisional law. *Compare Pennsylvania State Educ. Ass'n ex rel. Wilson v. Commonwealth,* 616 Pa. 491, 50 A.3d 1263, 1276–77 (2012); *Kowen-*

Commonwealth Court erroneously relied upon *Pennsylvania State Educ. Ass'n ex rel. Wilson v. Commonwealth,* 616 Pa. 491, 50 A.3d 1263 (2012) (*"PSEA"*) for the proposition that a party aggrieved by OOR's interpretation of the RTKL may file an action for declaratory relief in the Commonwealth Court's original jurisdiction. *See PSEA,* 616 Pa. 491, 50 A.3d 1263 (2012) (permitting a teachers' union to sue OOR seeking declaratory judgment in the Commonwealth Court, where the teachers' union raised substantial constitutional issues and was not a party to the underlying RTKL request proceeding). OOR asserts that our holding therein did not provide a grant of jurisdiction over it for purposes of the Declaratory Judgment Act generally, but rather was limited to circumstances where the administrative process involving OOR was inadequate to address a party's claim and where substantial constitutional issues were raised. OOR distinguishes *PSEA* from the instant case, pointing out that, unlike *PSEA,* this case does not involve a party left with no administrative or statutory process for pursuing a claim against OOR, and does not implicate a substantial constitutional issue.

OOR thus contends that the Commonwealth Court lacked subject matter jurisdiction to entertain OG's declaratory judgment action because OG did not raise an issue with constitutional overtones and, more importantly, because OG failed to exhaust its available statutory remedies.[7] OOR would have OG disallowed from challenging its interpretation of Section

*hoven v. Cnty. of Allegheny,* 587 Pa. 545, 901 A.2d 1003, 1010–12 (2006); *Pentlong Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 820 A.2d 1240, 1245 (2003); *Borough of Green Tree v. Bd. of Prop. Assessments, Appeals & Review of Allegheny Cnty.,* 459 Pa. 268, 328 A.2d 819, 824 (1974). Given that the alternative to OG's declaratory judgment action is a statutory remedy as provided for in the RTKL, rather than an administrative appeals process created by agency rules and regulations, for the sake of clarity we will utilize the term "exhaustion of statutory remedies" in our analysis of this issue.

7. OOR presumes that the rule requiring the exhaustion of statutory remedies operates to divest a court of its subject matter jurisdiction. As we have recently noted, our decisional law is not clear as to whether the exhaustion of statutory remedies doctrine implicates a court's jurisdiction, or whether the rule is a prudential concern serving as a

901 until a future case arises where OG is actually aggrieved, at which point, OG will be able to pursue fully its available statutory remedies, including appellate review as provided for in Chapter 13 of the RTKL. *See* 65 P.S. §§ 67.1101, .1301.[8]

OG responds that the Commonwealth Court properly exercised its original jurisdiction in OG's declaratory judgment action because its petition for declaratory relief sought review of what OG viewed as an interpretation of the RTKL which would continuously place OG, as well as all other Commonwealth agencies subject to the RTKL, at jeopardy. Specifically, OG asserts that OOR redefined the limits of its own jurisdiction to entertain RTKL appeals when it clarified the time frame within which an agency must respond to a RTKL record request, given that OOR lacks jurisdiction over RTKL appeals until a request has been "deemed denied." *See* 65 P.S. § 67.1101. OG thus characterizes its petition for declaratory relief as an action seeking to define the proper reach of OOR's authority in RTKL matters, which, according to OG, properly falls within the Commonwealth Court's original jurisdiction.

■ Before turning to OOR's arguments, we initially reject OG's argument that OOR's announced interpretation of Sec-

pre-requisite to a court's exercise of its jurisdiction. *See White v. Conestoga Title Ins. Co.*, 617 Pa. 498, 53 A.3d 720, 726 n. 11 (2012). It is unnecessary to resolve this question in our disposition of this matter before the Court.

8. Additionally, OOR likens this matter to *Marin v. Sec'y of Commonwealth*, 41 A.3d 913 (Pa.Cmwlth.2012) which this Court recently affirmed in a *per curiam* order. 620 Pa. 56, 66 A.3d 250 (2013). OOR's reliance on *Marin* is misplaced, as *Marin* does not address the jurisdiction of the Commonwealth Court to entertain declaratory judgment actions over OOR. Rather, in *Marin* an individual, allegedly attempting to register as a candidate in the 2010 congressional election, petitioned the Commonwealth Court for a declaratory judgment proclaiming Section 910 of the Election Code, 25 P.S. § 2870, unconstitutional, while also seeking an injunction barring OOR from allowing public access to petitioner's home address in accord with pertinent sections of that code. The Commonwealth Court dismissed the portion of the action seeking to hold Section 910 of the Election Code unconstitutional, concluding that OOR had no role in the enactment or enforcement of the Election Code, and was therefore neither a necessary nor appropriate party to the case. *Marin*, 41 A.3d at 915.

tion 901 purporting to clarify the time frame within which an agency must respond to RTKL record requests impermissibly redefined the scope of OOR's authority and thus widened the breadth of its jurisdiction over RTKL matters. Various provisions of the RTKL clearly confer upon OOR the authority to construe RTKL provisions and to decide RTKL matters. *See* 65 P.S. § 67.504 (authorizing OOR to "promulgate regulations relating to appeals involving ... Commonwealth agenc[ies]."); 65 P.S. § 67.1310(a)(2) (directing OOR to issue advisory opinions); 65 P.S. § 67.1310(a)(5) (granting OOR authority to review and decide appeals of decisions by Commonwealth agencies). Whether OOR advanced a correct interpretation of Section 901 in deciding the *Donahue* matter is a separate question with no jurisdictional overtones related to OOR's interpretation and enforcement of the RTKL generally.

We next turn to OOR's argument that, apart from an inadequate statutory or administrative remedy and the presence of substantial constitutional concerns, a declaratory judgment action addressed to the Commonwealth Court's original jurisdiction is an improper vehicle for challenging OOR's interpretation of the RTKL. *PSEA* serves as the basis of OOR's argument.

In *PSEA* a labor union representing public school employees filed an original jurisdiction action against OOR, seeking preliminary and permanent injunctions prohibiting the disclosure of the school employees' personal information after OOR ordered the release of these records pursuant to a series of RTKL requests filed with various school districts across Pennsylvania. 50 A.3d at 1266. The teachers' union premised its claims upon the right to due process. Notably, the teachers' union was not a party to the RTKL requests adjudicated before the OOR, and therefore had no administrative or judicial method under the RTKL by which to seek redress for its members' grievances. *Id.* at 1275.

While noting the general rule requiring the exhaustion of statutory remedies, this Court in *PSEA* held that a declaratory judgment action against OOR was appropriate under the circumstances, where the union raised substantial due process

concerns and lacked a reliable administrative or alternative judicial remedy. *Id.* at 1275–76. Moreover, notwithstanding that the OOR is a quasi-judicial tribunal, we further held that it was an indispensable and proper party to an action brought under the Declaratory Judgment Act, 42 Pa.C.S. § 7541(a), seeking an order regarding its interpretation of the RTKL, particularly when the aggrieved party lacked an adequate administrative or alternative judicial forum for obtaining relief, as was the case in *PSEA. Id.* at 1277.[9]

▪ OOR's attempt to limit the Commonwealth Court's jurisdiction over it to the facts of *PSEA* understates the reach of the Commonwealth Court's original jurisdiction over a Commonwealth agency like OOR. The Commonwealth Court has original jurisdiction over any action brought against the "Commonwealth government," as well as the authority to grant declaratory relief to the same. 42 Pa.C.S. §§ 761(a), 7541(a); *Vine v. Commonwealth,* 607 Pa. 648, 9 A.3d 1150, 1165 (2010). The Judicial Code defines the "Commonwealth government" as including ". . . the departments, boards, commissions, authorities and officers and agencies of the Commonwealth." 42 Pa.C.S. § 102. The OOR, as a Commonwealth agency, plainly falls within the statutory definition of "Commonwealth government" and is therefore subject to the original jurisdiction of the Commonwealth Court in any action properly brought against it. *See* 65 P.S. § 67.1310 (placing the Office of Open Records in the Department of Community and Economic Development, charged with implementing and enforcing the RTKL); *see also Vine,* 9 A.3d at 1165 (jurisdiction "relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs"). The fact that OG is bringing a declaratory judgment action against the OOR, a Commonwealth agency, to challenge its interpretation of Section 901, places this matter

9. Unlike in *PSEA,* there is no argument posited herein that, assuming the Commonwealth Court's jurisdiction and OG's standing, OOR is not an indispensable party to this dispute, as indeed it obviously is.

squarely within the scope of the Commonwealth Court's original jurisdiction.

We therefore reject OOR's contention that the absence of a substantial constitutional issue in this action deprives the Commonwealth Court of jurisdiction. While in *PSEA* this Court expressly held that a declaratory judgment action against OOR in the Commonwealth Court's original jurisdiction was appropriate where the aggrieved party lacked an available administrative remedy and raised a substantial constitutional issue, we never indicated that the facts of *PSEA* represented the extent of the Commonwealth Court's jurisdiction. *See PSEA,* 50 A.3d at 1275–77. To the contrary, in *PSEA* we cited with approval *Pentlong Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 820 A.2d 1240 (2003) (superseded by statute on other grounds, 53 P.S. § 7106) where we endorsed a "relatively flexible" approach in determining whether the Commonwealth Court should entertain a declaratory judgment action when the aggrieved party possesses an alternative legal remedy. *PSEA,* 50 A.3d at 1277; *Pentlong Corp.,* 820 A.2d at 1245–46, 1248 n. 16 (citing *Borough of Green Tree v. Bd. of Prop. Assessments,* 459 Pa. 268, 328 A.2d 819, 824 (1974)). Specifically, in *Pentlong Corp.,* this Court, notwithstanding the absence of a substantial constitutional question, sanctioned the exercise of jurisdiction by the Commonwealth Court over a declaratory judgment action involving allegations of fraud and unjust enrichment against a private entity engaged in municipal tax lien collections. *Pentlong Corp.,* 820 A.2d at 1248 n. 16.

We further reject OOR's contention that the rule requiring the exhaustion of statutory remedies effectively precludes OG from challenging OOR's interpretation of Section 901 by means of a declaratory judgment action brought in the Commonwealth Court's original jurisdiction. While it remains unclear whether the rule requiring the exhaustion of statutory remedies is jurisdictional or prudential (*see supra* note 7), even assuming, *arguendo,* one cast an exhaustion discussion in jurisdictional terms, there is no doubt a court may properly exercise its jurisdiction in the face of an existing

legal or statutory remedy when that remedy is either inadequate or incomplete. *Pentlong Corp.*, 820 A.2d at 1245. Specifically "[w]here, for instance, a legal remedy would result in a multiplicity of duplicative lawsuits and, in contrast, an action in equity would provide a tidy global resolution, this Court has found the legal remedy to be inadequate." *Id.* at 1245–46; *Kowenhoven v. County of Allegheny*, 587 Pa. 545, 901 A.2d 1003, 1010 (2006).

Here, OOR, an administrative agency, proffered an interpretation of Section 901 of the RTKL in its *Donahue* decision that immediately and detrimentally impacted OG. Nonetheless, OOR challenged OG's standing to appeal from OOR's *Donahue* decision because, as the Commonwealth Court noted, OG was the prevailing party therein.[10] OOR now argues that OG must first exhaust its statutory remedies under the RTKL before pursuing declaratory relief in the Commonwealth Court. OOR essentially advocates that OG await the following scenario: a future RTKL requestor challenges OG, or another entity subject to the RTKL, for violating OOR's interpretation of Section 901 articulated in *Donahue;* OOR resolves the dispute in favor of the requestor, consistent with *Donahue;* and OG, or the alternative entity, challenges OOR's interpretation of Section 901 before the Commonwealth Court in its appellate capacity. Meanwhile, OOR presumably expects OG and every other Commonwealth agency to act in accord with its *Donahue* decision, and thus face the direct and immediate administrative burden of complying with this pronouncement, unless and until the aforementioned scenario unfolds.

It is precisely under such circumstances, where a party is in need of relief from "uncertainty and insecurity with respect to rights, status, and other legal relations," and where a legal or

10. As it is unnecessary to the disposition of this present matter, we take no position with regard to the Commonwealth Court's order quashing OG's direct appeal from the *Donahue* decision, where the Commonwealth Court relied on its precedent in *Ridgway's Magnetics Co. v. Commonwealth*, 134 Pa.Cmwlth. 143, 577 A.2d 969 (1990) (holding that a prevailing party's mere disagreement with a tribunal's legal reasoning does not grant standing for purposes of appellate review under Pa. R.A.P. 501). Order of the Cmwlth. Ct., No. 376 M.D.2012 (July 2, 2012).

administrative remedy is inadequate, that declaratory relief is warranted. *See* 42 Pa.C.S. § 7541(a); *Kowenhoven,* 901 A.2d at 1011. As previously noted, OOR's construction of Section 901 announced in *Donahue* affects numerous parties, all of whom are burdened with the task of either complying with OOR's interpretation or challenging the same when they are found to have violated it. Accordingly, declaratory relief is appropriate in the Commonwealth Court's original jurisdiction to avert the potential "multiplicity of duplicative lawsuits" with regard to the same issue OG raised in its declaratory judgment action. *See generally Pentlong Corp.,* 820 A.2d at 1245–46; *Kowenhoven,* 901 A.2d at 1011.

Moreover, as we recognized in *Borough of Green Tree,* the rule requiring the exhaustion of statutory remedies need not apply where "the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision." *Borough of Green Tree,* 328 A.2d at 824 (internal quotation marks omitted). Given that OOR has stated its position with regard to Section 901 in its *Donahue* decision and defended the same on appeal to this Court, it is unlikely that awaiting formal consideration of the question in a future controversy between OOR and OG will provide further insight. *See Id.*

Thus, contrary to OOR's contention, OG's declaratory judgment action addressed to the Commonwealth Court's original jurisdiction was a proper vehicle for challenging OOR's interpretation of the RTKL. Our position is consistent with other decisions where we have permitted declaratory judgment actions brought in the Commonwealth Court's original jurisdiction against Commonwealth agencies acting within their adjudicatory or regulatory capacities. *See Arsenal,* 505 Pa. 198, 477 A.2d 1333 (declaratory judgment action brought against the Department of Environmental Resources seeking to enjoin the agency from implementing regulations); *Rendell v. Pennsylvania State Ethics Comm'n,* 603 Pa. 292, 983 A.2d 708 (2009) (declaratory judgment action against the Pennsylvania State Ethics Commission challenging an advisory opinion announcing the agency's interpretation of a governing statute);

*PPL Generation, LLC v. Commonwealth,* 604 Pa. 326, 986 A.2d 48 (2009) (declaratory judgment action against the Department of Environmental Protection seeking to invalidate the agency's emissions regulation promulgated pursuant to the Pennsylvania Air Pollution Control Act, 35 P.S. §§ 4001–4015); *Bayada,* 607 Pa. 527, 8 A.3d 866 (declaratory judgment action brought against the Department of Labor and Industry challenging the agency's proffered interpretation of a provision in the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101–333.115).

Finally, as with our discussion of OG's standing, we view it immaterial that OOR's path to its construction of Section 901 of the RTKL was first its adjudication of a case before it as a quasi-judicial tribunal, and then its position as an advocate. Of consequence is that OOR has adopted an interpretation of the statute in question and stated its intention to apply that interpretation prospectively to the apparent detriment of OG (as well as other Commonwealth agencies). Under these circumstances, we conclude that the Commonwealth Court properly exercised its original jurisdiction over OOR in this matter.

## IV.

With standing and jurisdiction concerns aside, we turn to our analysis of when the five business day period for responding to RTKL record requests begins pursuant to Section 901 of that act. OOR contends that the Commonwealth Court erred as a matter of law by interpreting Section 901 to provide that the five business day period for responding to RTKL record requests does not begin to run until the agency's respective open-records officer receives the request. First, citing to the Commonwealth Court's holding in *PGCB,* OOR argues that the court failed to follow its precedent establishing that an agency employee's receipt of a RTKL request triggers the five business day period for responding under Section 901. *See Pennsylvania Gaming Control Bd. v. Office of Open Records,* 48 A.3d 503 (Pa.Cmwlth.2012) (*"PGCB"*) *appeal granted,* 621 Pa. 131, 74 A.3d 1027 (2013). In *PGCB,* the

Commonwealth Court treated a RTKL request as "deemed denied" when an agency employee failed to forward the request to an open-records officer. *Id.* OOR contends that the outcome should be no different in the instant case.

According to OOR, the plain language of Section 901 requires that an agency respond to all RTKL record requests within five business days of receipt by any agency employee. OOR points to the first and last sentence of Section 901 which refer to "an agency's" receipt and response to RTKL records requests, and argues that the language necessarily implies that the five business day period for responding to a records request begins to run upon receipt by any employee of an agency. Moreover, OOR argues that the Commonwealth Court adopted an overly narrow interpretation of Section 901, specifically with regard to the language from Section 901 that reads: "[t]he time for respon[ding to a records request] shall not exceed five business days from the date the written request is received by the open-records officer for an agency." According to OOR, this language simply means that if the agency's open-records officer is the first employee to receive a RTKL records request, then the officer's response is not to exceed five business days.

OOR further argues that its interpretation of Section 901 is the only one that gives full effect to the express language of the RTKL. OOR notes that Section 703 of the RTKL contemplates the receipt of requests by any agency employee, because it directs such employees to forward all requests for records to the respective agency's open-records officer.[11] OOR further notes that Section 502 instructs open-records officers to "compute the day on which the five business day period under Section 901 will expire," and contends that the open-records officer should base the computation on when the first agency employee received the RTKL request.[12]

11. Section 703 provides in relevant part:

> A written request must be addressed to the open-records officer designated pursuant to section 502. Employees of an agency shall be directed to forward requests for records to the open-records officer. 65 P.S. § 67.703.

12. Section 502 provides in relevant part:

OOR places significance on the fact that various sections of the RTKL refer to an agency's determination of whether to grant or deny access to records as the "agency's response," as opposed to the "open-records officer's response." *See* 65 P.S. §§ 67.706, .903, .904, .905, .1101, and .1303. OOR contends that an open-records officer's duties are merely administrative while it is the agency that performs all critical decision-making functions with respect to the RTKL, and reasons that the five business day period for responding to a RTKL request necessarily begins to run when any agency employee first receives the request.

Finally, OOR argues that the Commonwealth Court's interpretation of Section 901 runs counter to the overriding legislative intent in enacting the RTKL, which is government transparency and the speedy resolution of requests for information. *See Levy v. Senate,* 619 Pa. 586, 65 A.3d 361, 368 (2013). OOR warns that, pursuant to the Commonwealth Court's interpretation of Section 901, an agency will be inclined to act in bad faith by delaying the transmission of RTKL requests from its employees to its open-records officer. Moreover, OOR contends that the Commonwealth Court's holding will inhibit parties requesting records from knowing when the fifteen day window for appealing from a deemed denial begins to run, since they will have no reliable method for determining when an agency's open-records officer first received a record request. *See* 65 P.S. § 67.901 (stating that when an agency fails to respond timely to a RTKL record request, the request is "deemed denied"); 65 P.S. § 67.1101 (conferring the right to file an appeal with the OOR within fifteen days of either a denial or a deemed denial).

> (b) Functions.—
>
> . . .
>
> > (2) Upon receiving a request for a public record, legislative record or financial record, the open-records officer [for an agency] shall do all of the following:
> > (i) Note the date of receipt on the written request.
> > (ii) Compute the day on which the five-day period under section 901 will expire and make a notation of that date on the written request.
>
> 65 P.S. § 67.502.

In response, OG contends that the plain language of Sections 901, 703, and 502 of the RTKL establish that agencies must respond to RTKL requests within five business days from the date the written request is received by an open-records officer for the agency, as opposed to any agency employee. OG argues that OOR's interpretation of Section 901 would require a result that is both impossible in execution and absurd in implementation. OG warns that if Section 901 is interpreted as to require an agency response within five business days of receipt by any agency employee, then agencies will be confronted with the impossible task of averring that no agency personnel are in receipt of a request. Finally, OG submits that if OOR's interpretation of Section 901 is upheld, agencies will experience "shotgun" RTKL record requests where duplicate requests are submitted to multiple agency employees. Accordingly, OG would have us affirm the Commonwealth Court's grant of declaratory relief.

■■■ As our analysis involves interpreting a provision from the RTKL, we necessarily begin by considering the Statutory Construction Act of 1972. 1 Pa.C.S. § 1501 *et seq.* The Statutory Construction Act directs that the object of all interpretation and construction of statutes is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. § 1921(a); *Chanceford Aviation Properties, LLP v. Chanceford Twp. Bd. of Supervisors,* 592 Pa. 100, 923 A.2d 1099, 1104 (2007). Generally, the best indicator of legislative intent is the plain language of the statute. *Walker v. Eleby,* 577 Pa. 104, 842 A.2d 389, 400 (2004). In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *Commonwealth v. Conklin,* 587 Pa. 140, 897 A.2d 1168, 1175 (2006). Only "[w]hen the words of the statute are not explicit" may a court resort to the rules

of statutory construction including those provided in 1 Pa.C.S. § 1921(c); [13] *Chanceford,* 923 A.2d at 1104. The statute must "be construed, if possible, to give effect to all its provisions," so that no provision is reduced to mere surplusage. 1 Pa.C.S. § 1921(a); *Walker,* 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

The RTKL requires all agencies to designate an open-records officer, who is tasked with handling RTKL record requests. 65 P.S. § 67.502(a)(1), (b). The RTKL further obliges agency employees who receive RTKL requests to forward the requests to the agency's open-records officer. 65 P.S. § 67.703. While there is no specified time frame for forwarding a request to the agency's open-records officer, Section 901 of the RTKL directs agencies to make a good faith effort to respond as promptly as possible, and in any event to respond no later than "five business days from the date the written request is received by the open-records officer for an agency." 65 P.S. § 67.901. Section 901 provides more fully:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort ... to respond as promptly as possible under the circumstances existing at the time of the request.... **The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency.** If the agency fails to send the response within five

**13.** The factors in § 1921(c) are:
> (1) The occasion and necessity for the statute.
> (2) The circumstances under which it was enacted.
> (3) The mischief to be remedied.
> (4) The object to be attained.
> (5) The former law, if any, including other statutes upon the same or similar subjects.
> (6) The consequences of a particular interpretation.
> (7) The contemporaneous legislative history.
> (8) Legislative and administrative interpretations of such statute.
> 1 Pa.C.S. § 1921(c).

business days of receipt of the written request for access, the written request for access shall be deemed denied. *Id.* (emphasis added).

 As noted above, in construing a statute, a reviewing court's objective is to discern the intent of the legislature, which is best indicated by the plain language of the statute. The language of this passage is clear and unambiguous. Simply put, agencies must respond to RTKL record requests within five business days after the agencies' respective open-records officer first receives the request. The five business day period plainly begins when the open-records officer receives a request. Because the directive in Section 901 is neither vague nor subject to more than one reasonable interpretation, there is no need to look beyond the plain meaning of the statute and resort to other indicia of legislative intent. *See* 1 Pa.C.S. § 1921(c). The Commonwealth Court thus properly concluded that Section 901 of the RTKL requires an agency to respond to a written request for records within five business days of the request's receipt by an agency's open-records officer.

OOR's insistence that Section 901 requires agencies to respond to RTKL record requests within five business days of receipt by any agency employee has no basis in the text of the statute. To defend its interpretation, OOR looks, in isolation, at the first and last sentences of Section 901 which refer to "an agency's" receipt and response to RTKL records requests, and argues that the language necessarily implies that the five business day period for responding to a records request begins to run upon receipt by any agency employee. OOR's interpretation, however, does not provide a satisfactory explanation of the language in Section 901 that specifically directs agencies to respond within "five business days from the date the written request is received by the open-records officer for an agency." While OOR acknowledges that the plain language of Section 901 affords an agency's open-records officer five business days to respond to a RTKL records request, OOR adds, without any basis, that this holds true only if the officer is the first agency employee to receive the request.

Because OOR's interpretation does not give effect to all the language contained in Section 901, and otherwise inserts language that does not appear in the text of the statute, we reject OOR's construction of Section 901. *See* 1 Pa.C.S. § 1921(a), 1922(2).

We also reject OOR's attempt to analogize this case to the Commonwealth Court's prior holding in *PGCB*. In *PGCB*, an agency employee failed to forward a records request to an open-records officer, supposedly ignoring the request after deciding, in a solitary act, that the request was defective. 48 A.3d at 505. The Commonwealth Court in *PGCB* concluded that the records request was "deemed denied" because the agency refused to respond, and further held that written requests for records do not need to be specifically addressed to the agency's open-records officer or follow specific formatting guidelines in order to be valid. *Id.* at 508–10. While the outcome in *PGCB* (a deemed denial) is consistent with OOR's contention that the five business day response period under Section 901 commences when any agency employee receives a records request, the cases are factually distinct. The issues raised in *PGCB* and the Commonwealth Court's analysis therein did not focus on the language of Section 901 pertaining to the five business day period for responding to RTKL requests. Indeed, the Commonwealth Court only mentioned Section 901 in passing. *Id.* at 511. Because of the different factual matrixes and given that the interpretation of Section 901 was not at issue in *PGCB*, the Commonwealth Court's holding in that case simply has no bearing on our analysis in the one before us.

Finally, we reject the various policy arguments that OOR raises in opposition to the Commonwealth Court's plain language reading of Section 901. Primarily, OOR argues that if the five business day response period under Section 901 commences upon receipt of a written record request by an agency's open-records officer, a Commonwealth agency like OG will be inclined to act in bad faith by delaying the transmission of RTKL requests from its employees to its

open-records officer, and thus frustrate the goal of the RTKL to facilitate the speedy resolution of requests for information.

■ We presume that Commonwealth agencies will act in good faith in discharging their statutory duties under the RTKL. *See In re Redevelopment Auth. of Philadelphia,* 595 Pa. 241, 938 A.2d 341, 345 (2007) (*citing Robinson v. City of Philadelphia,* 400 Pa. 80, 161 A.2d 1, 5 (1960) ("Public officials are presumed to have acted lawfully and in good faith until facts showing the contrary are averred, or in a proper case averred and proved.")); *In re Condemnation by Urban Redevelopment Auth. of Pittsburgh,* 527 Pa. 550, 594 A.2d 1375, 1380 (1991) (noting that a city planning commission, like a government agency, is "presumed to perform its duties in good faith and according to law."). Section 703 of the RTKL obliges agency employees who receive RTKL record requests to forward the requests to the agency's open-records officer. Further, Section 901 specifically directs agencies to make a good faith effort to respond to RTKL requests as promptly as possible, and in any event to respond within "five business days from the date the written request is received by the open-records officer." The fact that the RTKL leaves Commonwealth agencies a measured amount of discretion in handling RTKL record requests before the requests reach the agency's open-records officer does not alter our presumption that Commonwealth agencies will follow the directives in Section 901 and make a good faith effort to respond promptly to RTKL requests, in keeping with the RTKL's purpose of facilitating the speedy resolution of record requests submitted to government bodies.

OOR also argues that the Commonwealth Court's plain language reading of Section 901 will inhibit RTKL requestors from exercising their statutory appeal rights under Section 1101 in the event that a deemed denial occurs. Specifically, OOR contends that the Commonwealth Court's holding will deny RTKL requestors a reliable method for determining when their statutory appeal rights under Section 1101 are triggered in the event that a deemed denial occurs. Section 1101 confers upon requestors the right to file an appeal with

the OOR within fifteen days of either a denial or a deemed denial; while according to Section 901, a deemed denial occurs when an agency fails to respond timely to a RTKL record request. *Compare* 65 P.S. §§ 67.1101 *and* .901. As OOR points out, if pursuant to Section 901, the five business day period for responding to RTKL record requests begins to run from the date that a request is submitted or forwarded to an agency's open records officer, then a requestor cannot know with certainty (absent inquiry) when a deemed denial may occur and, correspondingly, when the fifteen day window for appealing from a deemed denial will open and close.[14]

We recognize that the interplay between Section 901 and Section 1101 of the RTKL highlights what appears to be a gap in the statutory scheme for processing RTKL record requests and appeals.[15] However, while it appears that the RTKL may not sufficiently apprise requestors of the timing of their statutory appeal rights under Section 1101, this does not serve as a valid basis for rejecting the plain meaning of Section 901. *See Walker*, 842 A.2d at 400 (the best indicator of legislative intent is the plain language of the statute). Indeed, notwithstanding the merits of either policy argument advanced by OOR, we cannot re-construe Section 901 because we believe an alternative interpretation would address certain unintended consequences of the law. *See* 1 Pa.C.S. § 1921(b) (when the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit"). We leave the task of rectifying

14. In its opinion, the Commonwealth Court notes that Section 502 of the RTKL directs open-records officers who are in receipt of a request for public records to note the date that a record request is received for the purpose of computing the five day period under Section 901. *Donahue*, 59 A.3d at 1169 n. 6. However, the fact that the open-records officer notes the date of receipt on the record request does not aid the requestor in readily determining when a deemed denial might occur and when his or her statutory appeal rights are triggered under Section 1101.

15. Indeed this is not the first time that this Court has noted a gap in the administrative and judicial review process existing in the RTKL. *See PSEA*, 50 A.3d at 1278–81 (Castille, C.J., concurring); *SWB Yankees LLC v. Wintermantel*, 615 Pa. 640, 45 A.3d 1029 (2012).

perceived deficiencies in the statutory scheme of the RTKL to the legislature.[16]

In light of the foregoing, we conclude that pursuant to the plain language of Section 901 of the RTKL, Commonwealth agencies must respond to RTKL record requests within five business days of the request's receipt by the agency's open-records officer. The order of the Commonwealth Court is therefore affirmed. Jurisdiction relinquished.

Justices SAYLOR, EAKIN, McCAFFERY and STEVENS join the opinion.

Chief Justice CASTILLE files a concurring opinion.

Justice TODD files a concurring opinion.

Justice STEVENS files a concurring opinion.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion, with the exception of footnote 6.[1] It disturbs me to have to write yet again in a case involving the oddities of the implementation and litigation stances of the Office of Open Records (the "OOR") involving the Right to Know Law ("RTKL"). Nevertheless, I am compelled to offer

16. To the extent the RTKL is unclear and in need of interpretation, the legislature delegated to OOR authority to promulgate regulations and issue advisory opinions, consistent with the act. *See* 65 P.S. § 67.504(a); 65 P.S. § 67.1310(a). OOR seems, however, to desire to employ these functions as well as its adjudicatory role to alter its legislative underpinning, when it dislikes it. This it cannot do. If OOR disagrees with the legislature's intentions as set forth in the RTKL, its only remedy is to seek an amendment to that act.

1. I have no objection to the Majority's use of the term exhaustion of statutory remedies. I simply distance myself from the distinction drawn in footnote 6 that suggests a substantive or practical difference between exhaustion of "statutory" versus "administrative" remedies.

I also note the characterization by the Office of Open Records of its exhaustion of statutory remedies claim as a jurisdictional imperative. The Majority notes that decisional law is not clear whether such claim implicates jurisdictional or prudential concerns. Accordingly, to the extent that the Majority Opinion addresses the exhaustion of statutory remedies as a jurisdictional concern, I view the expression as adopting the nomenclature used by the parties rather than a doctrinal pronouncement applicable across the board.

the following observations regarding the procedure by which this case reached the Court.

The dispute before the Court originated in a request for records submitted by a reporter to the Office of the Governor. The agency refused the request and, in the subsequent appeal, the OOR issued a broad procedural ruling premised upon Section 901 of the RTKL that, as the Majority correctly concludes in Part II of the Opinion, harmed the interests of the Office of the Governor (*"Donahue* decision"). *See* 65 P.S. § 67.901. Nevertheless, the OOR ultimately ruled in favor of the Office of the Governor, declining to order the release of the records by the agency; the Office of the Governor was handed a classic Pyrrhic victory, *id est,* a victory obtained at such a cost that it outweighs the benefit obtained.[2]

The Office of the Governor appealed the *Donahue* decision to the Commonwealth Court. In quashing the appeal, the Commonwealth Court capsulized the issue as follows: "Because petitioner is not aggrieved by the April 30, 2012 order but merely disagrees with an issue decided against it, it lacks standing to appeal the April 30, 2012 order." Order, 7/2/2013 (*per curiam* ) (citing *Ridgway's Magnetics Co. v. Unemployment Comp. Bd. of Review*, 134 Pa.Cmwlth. 143, 577 A.2d 969 (1990)). Nevertheless, with respect to the parallel declaratory judgment count, the Commonwealth Court overruled the OOR's preliminary objections, holding that the Office of the Governor did have standing to sue, premised upon the very same averment of harm caused by the *Donahue* decision that was insufficient to confer standing to appeal. On the merits, the Commonwealth Court ultimately agreed with the Office of the Governor's interpretation of Section 901 of the RTKL. The Office of the Governor did not appeal the decision of the Commonwealth Court that it lacked standing to pursue a direct appeal of the *Donahue* decision. The lower Court's "standing to appeal" decision and the Office of the Governor's

---

**2.** Reference is to Pyrrhus, King of Epirus, a son of Achilles and slayer of King Priam at the sacking of Troy, who, after invading Italy in 280 B.C., sustained heavy losses of his own troops in defeating the Roman legions at Asculum in 279 B.C.

concession have inextricable practical implications on how this Court reaches the merits of the dispute over the proper interpretation of Section 901.

The merits of the dispute regarding Section 901 are before this Court in the direct appeal of the OOR from the Commonwealth Court's decision granting the Office of the Governor declaratory judgment relief. The OOR raises three questions. The second question—addressed by the Majority in Part III of the Opinion—asks "Whether the Commonwealth Court erred by finding it had jurisdiction over the Governor's original jurisdiction complaint alleging a misinterpretation of statutory law in the absence of any harm or constitutional question?" As the Majority notes, in its briefing of the question, the OOR conflates the distinct notions of jurisdiction, standing, and exhaustion of statutory remedies. *See* Majority Op. at 449–50, 98 A.3d at 1230–31. The OOR's chief complaint, however, is that the Commonwealth Court lacked subject matter jurisdiction because the Office of the Governor failed to exhaust the available statutory remedies. Notably, the Office of the Governor's brief is not responsive to the OOR's actual arguments relating to the exhaustion of statutory remedies claim. Instead, the Office of the Governor suggests that the Commonwealth Court had original jurisdiction over the dispute because a declaratory judgment action is the sole means of obtaining review of the OOR's interpretation of Section 901. The argument is premised upon the notion—unsupported by citation to the relevant rules of procedure, decisional law, or a principled analysis—that standing to appeal an administrative agency decision and standing to bring a declaratory judgment action in the original jurisdiction of the Commonwealth Court implicate distinct requirements of aggrievement. For my part, the Commonwealth Court's decision and the Office of the Governor's concession relating to standing to appeal is the proverbial "elephant" in this room, with respect to which I offer the following.

The Commonwealth Court's standing decision and the related concession by the Office of the Governor have tenuous support in the plain language of the RTKL or of the Rules of

Appellate Procedure. Neither the RTKL nor the Pennsylvania Rules of Appellate Procedure purport to foreclose the appeal of a "prevailing" party—the ultimate "winner" of a dispute—upon that ground alone. Section 1301 of the RTKL provides the general rule governing judicial review of OOR decisions: "a requester or the agency may file a petition for review or other document as might be required by rule of court with the Commonwealth Court" within 30 days of the OOR decision's mailing date. Notably, Section 1301 does not articulate special rules of appealability applicable to RTKL cases. Meanwhile, the rule of appellate procedure governing which persons may take or participate in appeals—Rule 501—states that, "any party who is aggrieved by an appealable order ... may appeal therefrom." According to the commentary to Rule 501, "[w]hether or not a party is aggrieved by the action below is a substantive question determined by the effect of the action on the party, etc." Pa.R.A.P. 501 & note. Reading the relevant provisions together, it is apparent that the dispositive concern is whether a party is "aggrieved," which the note to Rule 501 directs is a substantive question determined "by the effect of the action on the party, etc."

I acknowledge that some decisional law may be read to suggest broadly that a prevailing party is, on that ground alone, not aggrieved and has no standing to appeal. *See, e.g., Basile v. H & R Block, Inc.,* 601 Pa. 392, 973 A.2d 417, 421–22 & n. 4 (2009) (matter implicating narrow question of whether party is required to file protective cross-appeal to preserve interlocutory issue for subsequent appeal); *Laird v. Clearfield & Mahoning Ry. Co.,* 591 Pa. 322, 916 A.2d 1091, 1097 (2007) (matter implicating narrow question of whether party may be aggrieved by consent order to which parties agreed); *Wilson v. Transport Ins. Co.,* 889 A.2d 563, 577 n. 4 (Pa.Super.2005) (protective cross-appeal raising issue upon which lower court did not pass); *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 700 (Pa.Super.2000) (same); *Hashagen v. W.C.A.B. (Air Products & Chemicals, Inc.),* 758 A.2d 276, 277 n. 2 (Pa.Cmwlth.2000) (same). Other decisions, including that upon which the Commonwealth Court relied to dismiss the

Office of the Governor's initial appeal, suggest a more nuanced analysis of standing to appeal, akin to that employed in determining standing to sue. *See Ridgway's Magnetics*, 577 A.2d at 970–71 (citing *Wm. Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 280 (1975) and concluding that Ridgway "assert[ed] no injury that [wa]s either immediate or pecuniary").

This matter illustrates the difficulty with the notion of a bright line rule that a "prevailing" party or ultimate "winner" may not appeal a decision that otherwise directly harms its interests.[3] The Office of the Governor argues that the *Dona-*

3. In my capacity as the elected District Attorney of the City of Philadelphia, I was well aware of the phenomenon of being directly "aggrieved" by decisions in which my office "prevailed." For example, a direct defense appeal to the Superior Court could result in a published opinion laying down a broad statewide rule of great harm to a multitude of pending and future prosecutions, but nevertheless ultimately denying the defendant relief on that claim, leaving the prosecution up against the prevailing party proscription. *See, e.g., Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12, 15–19 (1988) (criticizing Superior Court's requirements for punctilious adherence to technicalities of sentencing that developed from line of cases commencing with *Commonwealth v. Valentin*, 259 Pa.Super. 496, 393 A.2d 935 (1978), in which Superior Court affirmed sentence while articulating rule that sentencing judge must make his reasons clear, have accurate information, including presentence report where required, and consider defendant's character and particular circumstances of offense in arriving at individual sentence, and *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979), in which Superior Court vacated sentence holding that sentencing "court's statements were insufficient because, in consequence of their brevity and conclusory quality, they do not manifest a consideration of the statutory guidelines for sentencing, nor otherwise explain the reasoning behind the sentences imposed"). I suspect that certain panels rendering such decisions were well aware of the bind they thus created. The tactical practice is as old as *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803), in which the U.S. Supreme Court established the crucial power of the judiciary to provide a remedy by suit where a legal right exists, although, ultimately, the Court declined to exercise the authority so recognized to grant relief to the plaintiffs before the Court—thus avoiding a potential showdown with President Jefferson and the executive branch. In short, anyone with a modicum of practical appellate experience recognizes that the knee-jerk approach to "aggrievement" can cause substantial injustices. *See, e.g., Commonwealth v. Robinson*, 575 Pa. 500, 837 A.2d 1157, 1160–61 & n. 7 (2003) (noting that although Commonwealth had prevailed below because Superior Court denied post-conviction relief, Commonwealth was nevertheless aggrieved by Superior Court's decision to review

*hue* decision "immediately and detrimentally" affected its interests. Like the Majority, I agree. The Commonwealth Court held, and the Office of the Governor claims here, that the harm caused by the *Donahue* decision is a sufficient predicate for standing to file the original jurisdiction action but that the harm caused by the *Donahue* decision, in an apparent contradiction, was an insufficient basis to file an appeal. In my view, the perceived distinction is illusory, if not artificial; the same harm was enough to confer standing to appeal.

I recognize that the Commonwealth Court's "standing to appeal" holding was superficially colorable, even if the approach was self-contradictory of its "standing" reasoning relating to the declaratory judgment count, and so the Office of the Governor's concession regarding standing to appeal the OOR's *Donahue* decision perhaps is an understandable litigation strategy. Ultimately, the Office of the Governor was permitted to pursue declaratory relief and the "standing to appeal" decision had little immediate practical effect.

But, for this Court, the considerations are distinct. While I agree that approving the correct interpretation of Section 901 is important, this Court also has a supervisory duty to consider the prudential implications of its own procedural decisions for the proper functioning of the judicial system. If the decision were before us, I for one would conclude that the Office of the Governor most certainly was aggrieved by the *Donahue* decision, an aggrievement that conferred standing for the Office of the Governor to appeal that decision to the Commonwealth Court pursuant to Rule 501. A case like this should be directly appealable to the Commonwealth Court, to discharge its important direct review function respecting such disputes, and leaving the Supreme Court to review the claims on the discretionary docket, via allocatur petition.

merits of time-barred third serial petition for post-conviction relief premised upon theory that serial petition was extension of abandoned timely initial petition; harm was caused by substantial burden imposed on Commonwealth by requirement to brief merits of post-conviction claims attendant to Superior Court's approach to time bar).

Given the ongoing difficulties with the RTKL and the OOR, and this Court's power to provide broad guidance, I note there are unintentional and deleterious consequences of the procedural concession by the Office of the Governor and the related suggestion that the Office of the Governor lacked a statutory remedy. First, the lower court decision seemingly sanctioned an agency decision to by-pass the administrative review process and to shortcut the procedure by filing an action in the original jurisdiction of the Commonwealth Court and obtaining review as of right in this Court. Second, the declaratory judgment action is a collateral attack on the administrative decision that would enable the parties to proceed upon a lower burden of proof than in an appeal from an OOR decision, and to avoid salutary prudential concerns such as preservation and presentation of issues. Finally, these procedural artifices place an unnecessary burden upon this Court's limited resources. The OOR's and the Commonwealth Court's miscues in interpreting the RTKL have already generated a flurry of appeals that this Court has accepted on its discretionary docket. The lower court's approach in this matter has the potential effect of swinging the door open for litigants in OOR matters to file direct appeals of right to this Court. I have written extensively to these concerns in other matters and I will not reiterate those arguments here except by reference. *See, e.g., Mercury Trucking, Inc. v. PUC,* 618 Pa. 175, 55 A.3d 1056, 1076–79 (2012); *Bowling v. Office of Open Records,* 621 Pa. 133, 75 A.3d 453, 478–80 (2013) (Castille, C.J., dissenting).

The dispute between the parties relating to exhaustion of administrative remedies is a direct result of the arcane rules at play and the fact that the case did not proceed "cleanly" through the appeals process from the initial decision. Respectfully, in my view, it is beyond dispute that, as a general matter, the RTKL provides agencies (including the Office of the Governor) with a statutory remedy to challenge an adverse OOR decision. Any lack of remedy here would flow from the truncated notion of aggrievement I have described above, and thus is a result of the agency's interpretation of the Rules of Appellate Procedure and its subsequent concession

regarding its ability to appeal the OOR decision. Even accepting the argument of the Office of the Governor that it lacked a remedy, the complaint would not be related to a "statutory" remedy but to a rule-based procedural impediment to appeal.

Nevertheless, I have little difficulty with the Majority's decision to reject the OOR's claim regarding the exhaustion of statutory remedies, in the context of this *sui generis* matter, notwithstanding the Office of the Governor's unnecessary (or perhaps strategic) decision to acquiesce in the Commonwealth's Court's holding on standing to appeal. The Court may and should reach the merits of the parties' dispute for prudential reasons. Resolution of the dispute on the merits unquestionably is important to the Office of the Governor and to all other agencies subject to the RTKL and the OOR. The OOR decision in *Donahue* may affect numerous parties and agencies, not all of which may have an opportunity to challenge the decision before incurring harm. In this respect, the available statutory remedy is inadequate to vindicate the rights of the multitude of interested parties. In the meantime, the costs to the public purse accompanying agency efforts either to comply with the OOR's non-textual interpretation or to challenge the rule in every instance are unjustifiable. The OOR should consider more seriously, and fairly, these consequences when fashioning its seemingly shifting litigation stances.

Justice TODD, concurring.

In this case, the Office of the Governor ("OG") seeks a declaratory judgment that the Office of Open Records ("OOR") erroneously concluded in an administrative adjudication, in *dicta*, that the Pennsylvania Right–to–Know Law ("RTKL")[1] requires that an agency respond to requests for records within five business days of any of its employees' receipt thereof, arguing instead that the RTKL requires only that an agency respond within five business days of its *open records officer's* receipt thereof. I agree with the majority's

1. 65 P.S. § 67.101 *et seq.*

conclusion that we may reach this issue—albeit, as explained *infra*, for different reasons—and with its well-reasoned analysis of the RTKL's requirements, as it is clear to me that the RTKL requires that an agency respond to requests for documents within five business days of its open records officer's receipt thereof. Thus, I join parts I and IV of the Majority Opinion. However, I write separately to express my distinct views concerning the issues addressed in Parts II and III of the Majority Opinion.

## I. Standing

In my view, under our traditional standing jurisprudence, OG has suffered no harm to any of its direct and immediate interests, and would ordinarily lack standing to pursue the relief it seeks, thus requiring it to await normal administrative, then judicial, proceedings to raise this issue. The majority's conclusion to the contrary is, in my view, an unacknowledged departure from our extant standing doctrine. Nevertheless, in the unique context of this case, where OG stands in the shoes of numerous governmental agencies that require guidance in the conduct of their sovereign legal duties, where an underlying case provides a sufficient factual predicate for review, and where the question presented concerns a purely legal and procedural issue, I find the agencies' need for guidance outweighs our traditional concerns regarding the development of issues and the proper function of the judicial power as applicable in this case, and, thus, warrants our proceeding to the merits.

As the majority explains, the issue presented herein arose initially when Sean Donahue emailed a request for records to an OG employee, who forwarded the request to the agency's open records officer. Thereafter, beyond five business days from the employee's initial receipt, but within five business days of the open records officer's receipt of the email, OG responded, granting the request in part and denying the request in part. Donahue appealed to OOR, arguing that, pursuant to 65 P.S. § 67.901 ("Section 901"),[2] OG's failure to

2. Section 901 provides that "[u]pon receipt of a written request for access to a record, an agency shall make a good faith effort to ...

respond within five business days of its employee's receipt of the email required that his request be "deemed denied" and that, pursuant to extant OOR interpretations of the statute, required that OG disclose all the records sought. Ultimately, OOR issued an adjudication, agreeing with Donahue's arguments in that regard, but denying relief on other grounds.

Thereafter, OG brought a dual jurisdiction action in the Commonwealth Court seeking: (1) appellate review of the adjudication; and (2) a declaratory judgment that OOR erred in agreeing with Donahue's construction of Section 901. With respect to the appellate action, the Commonwealth Court entered a single judge order quashing the appeal, reasoning that OG, having prevailed below, lacked standing to appeal. With respect to the declaratory judgment action, OOR argued that OG had suffered no harm to its immediate interests and, thus, lacked standing to pursue declaratory relief. The Commonwealth Court disagreed, entering a similar single judge order finding that the adjudication had harmed OG by creating "controversy between [OOR] and [OG], and uncertainty ... over the proper interpretation of the [RTKL]." *Commonwealth v. Donahue*, 376 M.D.2012 (Pa.Cmwlth. filed Aug. 28, 2012) (order). The declaratory judgment action then proceeded to a three judge panel and, regarding the standing issue, the court refused to reconsider its earlier order. *Commonwealth v. Donahue*, 59 A.3d at 1167 n. 5 (Pa.Cmwlth.2013). OOR timely appealed to this Court.

In its opinion, the majority reasons that, notwithstanding the fact that OOR's announcement of its view of Section 901 was *dicta*, OG has standing to maintain the declaratory judgment action because OOR's defense of that *dicta* in the instant proceedings is the functional equivalent taking an official "position." Majority Opinion at 448–49, 98 A.3d at 1230. Moreover, the majority concludes OOR's position injures OG

respond as promptly as possible under the circumstances ... The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied."

because it imposes administrative burdens—that is, it will "shorten the window for responding to RTKL record requests, thereby making it more difficult ... to comply with the time requirements of Section 901," increasing "the likelihood of deemed denials" and "the number of RTKL matters that OG is forced to adjudicate with OOR." *Id.* at 448–49, 98 A.3d at 1230 (footnote omitted). The majority further opines that its holding is consistent with decisions recognizing "the justiciability of declaratory judgment actions seeking pre-enforcement review of an administrative agency's interpretation and enforcement of a governing statute." *Id.* at 450, 98 A.3d at 1230 (citing *Arsenal Coal v. Commonwealth,* 505 Pa. 198, 477 A.2d 1333 (1984); *Bayada Nurses, Inc. v. Commonwealth,* 607 Pa. 527, 8 A.3d 866 (2010)). Respectfully, I disagree, as in my view our traditional standing jurisprudence indicates that OG has suffered no injury permitting it to seek declaratory relief.

As a matter of prudence, Pennsylvania courts do not issue advisory opinions and, thus, a party seeking to invoke judicial power must ordinarily demonstrate that it has standing—that the asserted legal violation of which it complains has caused harm to one of its substantial, direct, and immediate interests. *Pittsburgh Palisades Park v. Commonwealth,* 585 Pa. 196, 888 A.2d 655, 659–60 (2005). The requirement of standing serves not only to enable courts to better resolve complex legal issues, but also to ensure that they do not exceed the proper bounds of judicial power and assume roles of self-appointed ombudsmen of the other coequal and coordinate branches of government. *See Zemprelli v. Daniels,* 496 Pa. 247, 436 A.2d 1165, 1168 (1981); *Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); *cf.* Antonin Scalia, *The Doctrine of Standing as an Essential Element of Separation of Powers,* 17 Suffolk U.L.Rev. 881 (1983).[3]

**3.** Although federal and Pennsylvania justiciability doctrines are distinct in that federal courts lack the power to issue advisory opinions, while Pennsylvania courts have the power, but, out of caution, decline to exercise it, the doctrines' policy goals and substance are substantially similar, and this Court has frequently used federal justiciability doctrine to inform its own decisions. *See Rendell v. Pa. State Ethics Comm'n,* 603 Pa. 292, 983 A.2d 708, 717 n. 10 (2009).

In keeping with those goals, this Court has consistently refused to exercise judicial power to remedy speculative future harms. In *Pittsburgh Palisades Park,* the petitioners, who intended to apply for gaming licenses, sought to challenge a statute providing for the refund of license fees in the event of subsequent legislative changes to the legal regime governing the gaming industry, arguing it "handcuffed" the General Assembly from making such changes and violated that body's exclusive right to exercise legislative power. This Court held that the petitioners lacked standing, in part, because they had not yet even applied for gaming licenses and because there was no evidence that the legislature had sought to change, but been restrained from changing, gaming law:

> Petitioners ... at this juncture they have not been issued a gaming license and there have been no allegations that legislators have been "handcuffed" by the prospect of returning gaming fees. Thus, any possible harm to Petitioners is wholly contingent on future events. As such, they have no immediate interest in this constitutional challenge. As Petitioners have no ... immediate interest in challenging the constitutionality of [the statute], we find that they lack standing to bring this challenge.

*Pittsburgh Palisades Park,* 888 A.2d at 660–61; *see also City of Phila. v. Commonwealth,* 575 Pa. 542, 838 A.2d 566, 578 (2003) (noting that "abstract or uncertain" allegations that a statute may harm a city's reputation or cause decreased economic activity are not "sufficient to confer standing").

Consistent with this doctrine, both the United States Supreme Court and this Court have held that a party may not ordinarily challenge the validity of an administrative agency's legal interpretations in the absence of their enforcement, except where the issue presented is adequately developed for review and where the regulation at issue has a direct and immediate effect on the regulated parties—that is, where deferring review would place the party seeking relief in a double bind, requiring it to comply at great cost or, in the alternative, run the risk of violating a lawful statute or regulation and incurring onerous burdens. *Compare Abbott Labora-*

*tories v. Gardner,* 387 U.S. 136, 149–56, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (permitting challenge to FDA's authority to promulgate certain regulations governing drug labeling where the legal issue was fully developed and where deferring review would force the manufacturers to either discard their stock of labeling and promotional materials or risk prosecution, civil and criminal penalties, and public stigma); and *Arsenal Coal Co.,* 477 A.2d at 1339 (Pa.1984) (citing *Abbott* and *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 162–165, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), in permitting challenge to DER's authority to promulgate rules concerning the anthracite mining industry where the issue was adequately developed and deferring review would result in either compliance at significant cost or the risk of strong civil sanctions); and *Bayada Nurses, Inc. v. Commonwealth,* 607 Pa. 527, 8 A.3d 866, 876 (2010) (permitting challenge to Department of Labor regulation refusing to apply wage and hour law's "domestic services" exemption to home healthcare agencies' employees where it was adequately developed and where deferring review would result in either compliance at significant cost or the risk of strong civil and criminal sanctions) *with Toilet Goods Ass'n, supra* (dismissing challenge to FDA's authority to promulgate regulations concerning inspections of food additive manufacturing facilities where the legal issue could be aided by further factual development and where deferring review would lead, at most, to a suspension of the right to do business which could be immediately appealed).

Thus, in the instant case, OG would typically be required to demonstrate that OOR's ruling has caused harm to its immediate interests, which it may do by demonstrating an actual or imminent injury, or by demonstrating that the legal issue it raises is adequately developed and that OOR's ruling has created a double-bind that will, regardless of OG's decision to comply or not, impose significant burdens on its interests. As an initial matter, OG does not explain how the *dicta* has already caused or will imminently cause it injury. Since OOR ruled that OG was entitled to withhold the documents Dona-

hue requested, its ruling has had no instant effect, and its proffered injuries are purely prospective.

Furthermore, although the question is closer, OG does not demonstrate that OOR's conclusion, assuming it is OOR's definitive interpretation of the statute,[4] concerns a legal issue which is adequately developed and has a direct and immediate effect upon it such that deferring review would place it in a double-bind requiring compliance at great cost or, in the alternative, running the risk of violating a lawful statute or regulation and incurring onerous burdens.

First, I question whether, as contemplated by the *Abbott/Arsenal Coal* decisions, the instant issue is sufficiently developed for review. In making this determination, we consider "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the amount of fact finding required to resolve the issue; and whether the parties to the action are sufficiently adverse." *Twp. of Derry v. Pennsylvania Dep't of Lab. and Indus.*, 593 Pa. 480, 932 A.2d 56, 58 (2007). Herein, OG's claim necessarily assumes that, in the future, RTKL requestors will, *contrary to the RTKL's requirements*, submit their requests for records to OG employees other than its open records officer, and that its employees will not forward the requests to the open records officer in a sufficiently timely manner to permit him or her to respond thereto within five business days of the initial receipt

---

4. I have some concern with the majority's *sub silentio* decision to extend the *Abbott/Arsenal Coal* line of decisions outside the context of formal administrative regulations, and note that the *Abbott* decision was, in some measure, predicated on the view that such regulations were final, formalized decisions of the agency itself. *See Abbott*, 387 U.S. at 151, 87 S.Ct. 1507 (noting that it did not address informal regulations, tentative positions, or decisions of subordinate officials). Although perhaps it is wise to extend the *Abbott* Court's reasoning to all agency positions which are formally or functionally definitive, and although OOR's ruling below and its advocacy in the instant proceedings may be relevant in determining whether it has taken a definitive position as to the RTKL's requirements, and counsel toward a conclusion that it has done so, the rationale of the *Abbott/Arsenal Coal* line of decisions would appear less appropriate in the context of uncertain agency positions, adjudicative *dicta*, and the rulings of subordinate officials, which are less likely to apply in future cases and, thus, to burden regulated parties.

of the request. *See* 65 P.S. § 67.703 (providing that requests "must be addressed to the open-records officer" and directing employees to forward them "to the open-records officer"). On the present record, it is far from clear that this scenario is an oft-recurring one for OG. Moreover, although we are presented with a purely procedural and purely legal question of statutory interpretation, I am unconvinced that OG and OOR are sufficiently adverse to one another's interests, or, at least, as adverse to one another as an agency and a party actually seeking disclosure of records from that agency might be. Thus, at a minimum, it is an open question as to whether or not the issue of the RTKL's response requirements is, at this time, sufficiently developed for judicial review.

Second, in my view, OG has failed to demonstrate that OOR's adjudication placed it in a dilemma of compliance or noncompliance, where either option comes at great cost. Admittedly, OOR's *dicta* may give OG pause as to how it should deal with improperly filed and less-expeditiously forwarded RTKL requests for records in the future, its burdens do not appear both substantial and unavoidable. On one hand, if OG acquiesces in OOR's expressed view of the RTKL's requirements, it may have to adopt new procedures for handling improperly filed RTKL requests, which could require some administrative expense. Without elaborating on the claim or offering supporting evidence, OG asserts compliance would come "at a significant administrative burden." OG's Brief at 12.

On the other hand, especially if it deems the administrative expense too onerous, it can reject OOR's view, and, if necessary, litigate the question. Thus, if a future RTKL requestor improperly files a request for records with one of OG's employees other than its open-records officer, and if the employee delays in forwarding the request to the open-records officer, it can follow its own view of the statute and respond within five business days of the open-records officer's receipt. At that point, if the requestor appeals, OG will have the option of pursuing an interlocutory appeal challenging OOR's view that its delay constitutes a deemed denial and, thus, that it has

jurisdiction to hear the appeal, whereupon it may obtain the review it seeks now. *Cf.* Pa.R.A.P. 312; 313. Alternatively, if OG does not pursue or obtain interlocutory review, and OOR persists in its enunciated view of the RTKL's requirements, OG will have the opportunity to appeal to the Commonwealth Court as of right and to this Court in its discretion and, at maximum, may be required to disclose documents.[5] Finally, if OG does not obtain interlocutory relief, and OOR reverses its position as to the RTKL's requirements, OG will suffer no burden whatsoever.

Thus, OOR's ruling requires OG to choose between what it views as an unjustified administrative burden or a quite remote possibility that it may be required to disclose challenged documents. In my view, pursuant to *Abbott* and *Arsenal Coal,* these choices do not warrant departure from the normal course of judicial review to raise the question of whether OOR's current view of the statute is correct.

The majority notes that OOR's interpretation of Section 901 presents OG with a choice to comply with potential additional administrative burdens, or not to comply and await judicial review. Majority Opinion at 456 & n. 10, 98 A.3d at 1234 & n. 10. I note that we have, at this point, no substantive allegations as to the frequency of improperly filed and untimely filed requests, no evidence as to what administrative changes would be required to respond to them, and, thus, no meaningful basis upon which to discern what, if any, effect acquiescence in OOR's interpretation would have on OG or other Commonwealth agencies not involved in this litigation. *Compare Abbott,* 387 U.S. at 152, 87 S.Ct. 1507 (noting that the drug manufacturers compliance would require them to "change all

---

**5.** I question whether OOR will persist in its view of Section 901's provisions concerning the effect of a deemed denial where a response is untimely, as this Court has cast doubt upon, and the Commonwealth Court has definitively rejected, the view that a deemed denial works a waiver of an agency's defenses to disclosure of all the documents requested. *See Levy v. Senate of Pa.,* 619 Pa. 586, 65 A.3d 361, 382–83 (2013) (holding that an agency's failure to provide all bases for its denial of a request does not bar it from asserting different bases before OOR); *McClintock v. Coatesville Area Sch. Dist.,* 74 A.3d 378 (Pa. Cmwlth.2013) (applying *Levy* to deemed denials).

their labels, advertisements, and promotional materials," "destroy stocks of printed matter" and "invest heavily in new printing type and new supplies."); *Gardner v. Toilet Goods Ass'n, Inc.*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967) (noting the drug manufacturers alleged compliance would cost millions of dollars per drug). Moreover, even assuming we may take judicial notice of these costs, and assuming those costs would be great, *Abbott/Arsenal Coal* decisions require not only that compliance come at great cost, but that a party may not rely on the ordinary process of judicial review because, in the interim, it will incur similarly great sanctions. Indeed, the majority appears to depart from this Court's prior decisions permitting pre-enforcement review of administrative regulations and extend such review to parties who incur relatively ordinary and innocuous burdens applicable to all parties subject to administrative regulation. In *Arsenal Coal*, fifty-five coal operators and producers filed an action challenging the Department of Environmental Resources' authority to promulgate regulations governing the extraction and production of anthracite coal, the violation of which subjected them to numerous civil penalties, including the denial of a permit to continue business. *Arsenal Coal*, 477 A.2d at 1334–38. In holding that the matter was ripe for judicial review, we noted that, consistent with *Abbott*, the coal companies were faced with a Hobson's choice of compliance or noncompliance, either of which would subject them to great costs:

> Appellants may refuse to comply and test the regulations by appealing, for example, a denial of permit to operate, or a denial of bond release, or by defending actions imposing sanctions for non-compliance. 52 P.S. § 1396.4(b). This proposed avenue of review is beset with penalties and impediments to the operation of the anthracite industry rendering it inadequate as a satisfactory alternative to the equitable action initiated under the original jurisdiction of Commonwealth Court.

> The alternative to challenging the regulation through non-compliance is to submit to the regulations. We cannot say that the burden of such a course is other than substantial,

accepting, as we must on a motion to dismiss on the pleadings, the allegations of the complaint as true. Appellants have alleged that the regulations require the expenditure of substantial sums to comply which, while not immediately calculable, will substantially impair the cash flow of all Appellants. Whether or not this allegation is true, it is clear that if Appellants elect to comply and await judicial determination of validity in subsequent piecemeal litigation, the process would be costly and inefficient.

*Arsenal Coal,* 477 A.2d at 1340.

Likewise, in *Bayada Nurses,* a 38–office, 1,000–employee home care services corporation sought to challenge a Pennsylvania Department of Labor regulation refusing to apply wage and hour law's "domestic services" exemption to home healthcare agencies' employees, the violation of which would have subjected it to strong civil and criminal penalties. *Bayada Nurses,* 8 A.3d 866 at 877. Applying the *Abbott/Arsenal Coal* framework, we concluded that matter was ripe for review, in part, because denial of review would place the healthcare provider in a similar double bind:

Bayada is faced with the option of continuing its operations, and ignoring the Department's interpretation regarding overtime requirements and risk penalties and fines, including criminal sanctions, or complying with what it believes to be the Department's erroneous interpretation and awaiting a judicial determination in subsequent litigation, in the interim bearing the not insignificant cost of compliance.

*Bayada Nurses,* 8 A.3d at 876. By contrast, in the instant case, OG has not been placed in a Catch–22 whereby its only two choices are to comply, or not comply, and in either event will suffer serious hardships similar to those in *Arsenal Coal* and *Bayada Nurses.*

Indeed, the United States Supreme Court's decision in *Toilet Goods Ass'n* is an instructive guide. Therein, the court refused to engage in pre-enforcement review of the FDA's authority to promulgate regulations concerning inspections of food additive manufacturing facilities, noting that the inquiry

included consideration of "the degree and nature of the regulation's present effect on those seeking relief." *Toilet Goods Ass'n*, 387 U.S. at 164, 87 S.Ct. 1520. The Court found the regulation's effects insufficiently onerous because its impact would not "be felt immediately by those subject to it in conducting their day-to-day affairs" but instead would depend on whether the FDA decided to inspect:

> This is not a situation in which primary conduct is affected—when contracts must be negotiated, ingredients tested or substituted, or special records compiled. This regulation merely states that the Commissioner may authorize inspectors to examine certain processes or formulae; no advance action is required of cosmetics manufacturers, who since the enactment of the 1938 Act have been under a statutory duty to permit reasonable inspection of a "factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials; containers, and labeling therein." Moreover, no irremediable adverse consequences flow from requiring a later challenge to this regulation by a manufacturer who refuses to allow this type of inspection. Unlike the other regulations challenged in this action, in which seizure of goods, heavy fines, adverse publicity for distributing "adulterated" goods, and possible criminal liability might penalize failure to comply, a refusal to admit an inspector here would at most lead only to a suspension of certification services to the particular party, a determination that can then be promptly challenged through an administrative procedure, which in turn is reviewable by a court. Such review will provide an adequate forum for testing the regulation in a concrete situation.

*Toilet Goods Ass'n*, 387 U.S. at 164, 87 S.Ct. 1520 (citations and footnotes omitted). Herein, OG will incur no significant "irremediable adverse consequences" if we delay review of OOR's view of the statute, as, at most, its refusal to acquiesce would lead to a deemed denial and ordered disclosure of documents in its possession, both of which could then, as I note above, "be promptly challenged through an administra-

tive procedure" and reviewed by the Commonwealth Court as of right, and by this Court in its discretion.

Finally, I am concerned that the majority's decision to extend *Abbott/Arsenal Coal* to the instant context will give rise to significant unintended consequences. By permitting a challenge to an administrative agency's *dicta* based on speculative future administrative and litigation burdens, the Court virtually ensures that future parties, private and public alike, will have a right to challenge the validity of legal pronouncements made in statutes, formal and informal regulations, ordinances, adjudicative (and even judicial) *dicta* based solely on the "uncertainty" that such pronouncements may or may not be accurate, purely on the ground that the statute regulates conduct in which they intend to engage. Granting such a right virtually guarantees that this Court will be embroiled in poorly developed, ill-considered, and largely academic debates examining other governmental entities' legal judgments.

Accordingly, I would not attempt to sanction standing in this matter under the umbrella of *Abbott* and *Arsenal Coal.* Rather, in the fairly unique context of this case, and given that our application of the standing doctrine is prudential in nature, I am inclined to apply a more holistic view. As noted above, this Court refuses to issue advisory opinions largely out of concern that doing so robs the court of the practical factual predicate and adversarial argument necessary for the resolution of complex legal issues. In the instant matter, however, the need for legal guidance is greater than the average case, as OG, as well as the multifarious other state governmental agencies subject to the RTKL's requirements, have a sovereign duty to follow the law in their day-to-day responsibilities and to do so faithfully in the interests of the citizenry. *Cf. Georgia v. Tennessee Copper Co.,* 206 U.S. 230, 237, 27 S.Ct. 618, 51 L.Ed. 1038 (1907) (noting that the state has an interest not only in its own rights but, as *quasi*-sovereign, in the property rights of its citizens); *Massachusetts v. EPA,* 549 U.S. 497, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) (relying on *Tennessee Copper* to find that Massachusetts had standing to challenge the EPA's failure to regulate greenhouse gases).

Indeed, although OG's claim, like any other particular agency's claim, that it will receive improperly filed requests for documents in the future is speculative, it seems a fair assumption that, given the vast bulk of the administrative state, the issue will arise with some regularity in the future across the affected agencies. Moreover, although OG has abandoned its appeal from the *Donahue* decision, its arguments arise directly from OOR's conduct in that case, such that *Donahue* provides context for the practical consideration of the issues presented. Likewise, although, as noted *supra*, OG and OOR may not be sufficiently adversarial parties with respect to the substantive controversy over OG's records, OG has essentially challenged OOR's jurisdiction such that OOR is likely to defend the case with vigor akin to a party seeking the disclosure of OG's records. Finally, given that the issue is a purely legal issue of statutory interpretation concerning an exclusively procedural question, I am less concerned that taking up review will embroil this court in precipitous questioning of the substantive policy judgments of another branch of government. Thus, although I do not join what I view as the majority's broad reframing of the standing doctrine, which could have far-reaching consequences in future cases, I find that the agencies' need for guidance under this peculiar set of circumstances substantially outweighs the concerns underlying our traditional standing approach, and I am willing to reach the merits notwithstanding OOR's claim that OG lacks standing.

## II. Exhaustion

With respect to the doctrine requiring the exhaustion of administrative remedies, I agree with the sentiments expressed by the majority and Chief Justice Castille in his Concurring Opinion that the unique circumstances of this case warrant some dispensation regarding that rule. As the majority recognizes, the doctrine requiring exhaustion of administrative remedies may give way where "the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing ... decision" or deciding the issue now serves to avoid the proliferation of "a multiplicity of duplicative lawsuits" by providing "a tidy

global resolution," and both principles are plainly applicable in the instant matter. *See* Majority Op. at 456, 98 A.3d at 1233–35 (internal citations and quotation marks omitted); *see also* Concurring Opinion (Castille, C.J.) at 471–73, 98 A.3d at 1244–45.[6] Given the marginal benefit that delaying consideration would garner, and the substantial burden that reaching the issue now would alleviate, I am willing to reach the merits notwithstanding OOR's claim that OG has failed to exhaust its administrative remedies.

Justice STEVENS, concurring.

I join the majority in its entirety. I write separately, however, to reaffirm my support of the importance of the Right–to–Know Law (RTKL).[1] This body of law plays a fundamental, significant role in the administration of Pennsylvania government and promotes broad transparency between the public and its government officials. By allowing access to official government records that the public would ordinarily be unable to obtain, the RTKL gives the public the power to prohibit secrets, scrutinize the acts of public officials, and make those officials accountable for their use of public funds. *Coulter v. Dept. of Public Welfare*, 65 A.3d 1085 (Pa.Cmwlth. 2013); *Buehl v. Pennsylvania Dept. of Corrections*, 955 A.2d 488 (Pa.Cmwlth.2008). Thus, the RTKL is an invaluable tool in our state government.

---

6. However, I reiterate that, contrary to the majority's view, as detailed above, *Arsenal Coal* and its progeny do not apply in the instant context.

1. 65 P.S. § 67.101 *et. seq.*